**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| DATASPHERE, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>FOX CORPORATION and FOX SPORTS PRODUCTIONS, LLC,<br><br>Defendants. | CASE NO.: 1:26-cv-01100-MN |

**MEMORANDUM IN SUPPORT OF DEFENDANTS FOX CORPORATION AND FOX SPORTS PRODUCTIONS, LLC's MOTION TO DISMISS DATASPHERE'S COMPLAINT FOR PATENT INFRINGEMENT UNDER FED. R. CIV. P. 12(B)(6)**

Daniel J. Goettle (#6664)
dgoettle@bakerlaw.com
BAKER & HOSTETLER LLP
1201 N. Market Street
Suite 1407
Wilmington, DE 19801
(302) 407-4220

Dated: November 6, 2026

# TABLE OF CONTENTS


I. STATEMENT OF NATURE AND STAGE OF PROCEEDINGS .................................. 1

II. SUMMARY OF THE ARGUMENT .................................................................. 1

III. STATEMENT OF FACTS .......................................................................... 3

IV. ARGUMENT ............................................................................................ 4

A. Legal Standard ........................................................................................ 4

1. Plausible pleading in general .................................................................... 4

2. Pleading direct infringement ...................................................................... 4

3. Pleading induced infringement ................................................................... 5

4. Pleading willful infringement ...................................................................... 5

5. Pleading compliance with 35 U.S.C. § 287(a) ............................................. 6

B. The Court should dismiss the direct infringement claims of counts I through III because the complaint fails to plead plausible facts supporting the alleged direct infringement. .......................................................... 7

1. Count I fails to plausibly allege that any accused Fox system includes claim 1's "next-hop address" or "network interface." ................................ 7

2. Count II fails to plausibly allege that any accused Fox system includes claim 25's "data rate" requirements. ......................................................... 10

3. Count III fails to plausibly allege that any accused Fox system includes claim 25's remote-memory determination or allowing transmission only when the recited memory is available. ......................... 12

C. The induced infringement allegations in counts I and II should be dismissed because the complaint fails to plausibly plead various elements of inducement. .......................................................................................... 15

D. The willful infringement allegations of counts I and II should be dismissed because the complaint fails to plausibly plead various elements of willful infringement. ....................................................................................... 18

E. The Court should dismiss DataSphere's pre-suit damages claim as to the '381 patent because the complaint fails to plead compliance with the marking statute. .............................................................................................. 19

V. CONCLUSION ........................................................................................ 20

# TABLE OF AUTHORITIES

**Federal Cases** **Page(s)**

*AgroFresh Inc. v. Essentiv LLC*,
No. CV 16-662 (MN), 2019 WL 350620 (D. Del. Jan. 29, 2019) .................................... 13, 14

*Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*,
876 F.3d 1350 (Fed. Cir. 2017) ..................................................................................... 7, 19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................................................................................................... *passim*

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ....................................................................................................... 4, 7, 12

*Bot M8 LLC v. Sony Corp. of Am.*,
4 F.4th 1342 (Fed. Cir. 2021) ....................................................................................... *passim*

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
681 F.3d 1323 (Fed. Cir. 2012) ..................................................................................... 5

*Commil USA, LLC v. Cisco Sys., Inc.*,
135 S. Ct. 1920 (2015) .................................................................................................. 5, 15, 17, 18

*Densys Ltd. v. Align Tech. Inc.*,
No. CV 25-768-GBW, 2026 WL 1506566 (D. Del. May 29, 2026) ............................... 16, 19

*Dodots Licensing Sols. LLC v. Lenovo Holding Co., Inc.*,
No. CV 18-098 (MN), 2018 WL 6629709 (D. Del. Dec. 19, 2018) ................................ 16, 18

*DSU Med. Corp. v. JMS Co.*,
471 F.3d 1293 (Fed. Cir. 2006) ..................................................................................... 5, 18

*Fowler v. UPMC Shadyside*,
578 F.3d 203 (3d Cir. 2009) ......................................................................................... 4

*Glob.-Tech Appliances, Inc. v. SEB S.A.*,
563 U.S. 754 (2011) ....................................................................................................... 15, 18

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
136 S. Ct. 1923 (2016) .................................................................................................. 6, 19

*Huang v. Amazon.com, Inc.*,
No. 2024-1428, 2025 WL 314718 (Fed. Cir. Jan. 28, 2025) .......................................... *passim*

*Kajeet, Inc. v. Gryphon Online Safety, Inc.*,
No. CV 19-2370 (MN), 2021 WL 780737 (D. Del. Mar. 1, 2021) ................................... 5, 15

*LoganTree LP v. Omron Healthcare, Inc.*,
No. CV 18-1617 (MN), 2019 WL 4538730 (D. Del. Sept. 19, 2019)...........................5, 15, 17

*N. Star Innovations, Inc. v. Micron Tech., Inc.*,
No. CV 17-506-LPS-CJB, 2017 WL 5501489 (D. Del. Nov. 16, 2017)..................5, 9, 10, 14

*OptiMorphix, Inc. v. Akamai Techs., Inc.*,
No. CV 24-1336-MN, 2026 WL 221923 (D. Del. Jan. 28, 2026) ....................................16, 19

*Princeton Digital Image Corp. v. Ubisoft Ent. SA*,
No. CV 13-335-LPS-CJB, 2016 WL 6594076 (D. Del. Nov. 4, 2016)..............................6, 19

*Raindance Techs., Inc. v. 10x Genomics, Inc.*,
No. 15-152-RGA, 2016 WL 927143 (D. Del. Mar. 4, 2016) ...................................................5

*Sapphire Crossing LLC v. Robinhood Markets, Inc.*,
No. 181717MNCJBCONSOLIDA, 2021 WL 149023 (D. Del. Jan. 15, 2021) ........................6

*Valinge Innovation AB v. Halstead New England Corp.*,
No. CV 16-1082-LPS-CJB, 2018 WL 2411218 (D. Del. May 29, 2018) .....................6, 18, 19

*Wrinkl, Inc. v. Facebook, Inc.*,
No. 20-1345-RGA, 2021 WL 4477022 (D. Del. Sept. 30, 2021).....................................16, 19

*ZapFraud, Inc. v. Barracuda Networks, Inc.*,
528 F. Supp. 3d 247 (D. Del. 2021)..........................................................................16, 19

**Federal Statutes**

35 U.S.C. § 271(a) ..........................................................................................................5

35 U.S.C. § 287(a) .....................................................................................................6, 19

**Other Authorities**

Fed. R. Civ. P. 8(a)(2).......................................................................................................4

Fed. R. Civ. P. 12(b)(6).....................................................................................................1

## I. STATEMENT OF NATURE AND STAGE OF PROCEEDINGS

Defendants Fox Corporation and Fox Sports Productions, LLC (collectively, "Fox") move to dismiss counts I through III of Plaintiff DataSphere, LLC's ("DataSphere") complaint under Fed. R. Civ. P. 12(b)(6) for failure to meet the pleading requirements set forth in *Iqbal* and *Twombly*.

## II. SUMMARY OF THE ARGUMENT

Fox moves under Rule 12(b)(6) to dismiss the complaint in its entirety. Specifically, Fox moves to dismiss (1) the direct infringement allegations in counts I through III, (2) the induced-infringement allegations in counts I and II, (3) the willful infringement allegations in counts I and II, and (4) count II's demand for pre-suit damages.[1]

As for the direct-infringement allegations of counts I through III, the complaint alleges infringement of three unrelated patents, two of which have already expired and the third to expire in January 2027. Despite the technological differences across these three patents, the complaint uses the same pleading device for each count. The complaint quotes a claim limitation, alleges – sometimes only "on information and belief" – that unspecified circuitry or network components satisfy it, and then lists a series of things that "may" meet the claim limitation. But such vague pleading does not plausibly identify an infringement theory. It only vaguely lists possibilities.

While pleadings jurisprudence does not require proof at the pleading stage, it does require factual allegations demonstrating why infringement is plausible. A complaint does not cross the line from vague possibility to plausibility simply by naming a product family and listing a non-exhaustive menu of alternative components, addresses, counters, queues, or control states without identifying not only which of the listed items allegedly satisfies a material claim

---

[1] The complaint does not allege indirect or willful infringement in count III.

limitation but also how the item performs the claimed function.

These defects appear in each direct-infringement count. As for count I, the complaint addresses only claim 1 of U.S. Patent No. 7,529,239 ("the '239 patent") but never identifies a "next-hop address" or "network interface" in any accused Fox system as recited in the claim. Recited in four of the five steps of this method claim, the "next-hop address" limitation features prominently. The claim not only requires that the "next-hop address" be determined but also that it be (i) used to select a device, (ii) placed in the transmission packet, and then (iii) used by that device for onward forwarding. Similarly, "network interface" is recited in two of the steps, first being determined and then being included in a transmission packet. But the complaint fails to identify any "next hop address" or "network interface," instead providing non-exhaustive lists of items that ***may*** qualify for each and failing to allege how the relevant claim limitations correspond to any Fox accused system.

Count II is similarly deficient. Count II addresses only claim 25 of U.S. Patent No. 7,640,381 ("the '381 patent") but never identifies which alleged measure the accused system supposedly used to "identify" a client-facing "data rate" that is "based on an amount of data existing" in that client's buffer, as the claim requires. Instead, the complaint uses vague terminology such as "may include," "by way of example," "without limitation," and "one or more such measures," and an irrelevant "zero-credit condition" but nowhere identifies any rate based on an amount of data in any buffer.

Count III addresses only claim 25 of U.S. Patent No. 7,782,778 ("the '778 patent"), which requires determining whether memory in an egress terminal is available to store received data "based at least in part on a data amount transmitted to the egress terminal" and allowing transmission from a first network to an ingress terminal "only when the memory is available."

But the complaint only lists multiple possible state variables and admission-control mechanisms without identifying which ones Fox actually supposedly used or including facts plausibly showing which, if any, performed the causal relationships required in the claim.

As for the inducement and willfulness allegations in counts I and II, these are equally deficient. While inducement and willfulness require pre-suit knowledge of the respective asserted patent, neither count alleges any such knowledge. As for inducement, far from plausibly pleading facts, neither count alleges any fact that may even possibly demonstrate (i) knowledge that another's conduct constituted infringement or (ii) specific intent to cause the supposedly infringing acts. Similarly, as for the willfulness allegations, neither count I or II alleges any fact possibly – let alone plausibly – showing deliberate or egregious infringement conduct.

Finally, because the asserted '381 patent claim is an apparatus claim, DataSphere must plead facts supporting compliance with 35 U.S.C. § 287(a) to seek pre-suit damages. But count II nowhere does so, and therefore the claim for past damages should be dismissed.

## III. STATEMENT OF FACTS

Count I of DataSphere's August 2026 complaint alleges infringement of claim 1 of the '239 patent based on Fox's alleged use of EVPN-VXLAN routed overlays. D.I. 1 ¶¶ 49-70. This patent appears to have expired on September 2, 2026.

Count II alleges infringement of claim 25 of the '381 patent based on Fox's alleged use of Brocade Gen 7 Fibre Channel SAN switches and directors. *Id.* ¶¶ 71-95. This patent appears to expire on January 2, 2027.

Count III alleges infringement of claim 25 of the '778 patent based on Fox's alleged use of long-distance optical Fibre Channel links and SAN-extension systems. *Id.* ¶¶ 96-110. This patent appears to have expired on October 27, 2025.

# IV. ARGUMENT

## A. Legal Standard

### 1. Plausible pleading in general

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss for failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) ("a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'") (citation omitted).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Instead, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). To be plausible, a claim must do more than simply provide "labels and conclusions" or "a formulaic recitation of the elements of a cause of action"; it must demonstrate the basis for its entitlement to relief with its facts. *Twombly*, 550 U.S. at 555.; *see also Fowler*, 578 F.3d at 210.

### 2. Pleading direct infringement

To state a claim for direct infringement, a plaintiff must explicitly plead facts to plausibly support the assertion that the defendant "without authority makes, uses, offers to sell, or sells any patented invention . . . during the term of the patent." 35 U.S.C. § 271(a). A plaintiff must

plausibly plead facts that indicate an accused instrumentality practices each of the limitations found in an asserted claim. *Kajeet, Inc. v. Gryphon Online Safety, Inc.*, No. CV 19-2370 (MN), 2021 WL 780737, at *3 (D. Del. Mar. 1, 2021); *see also Raindance Techs., Inc. v. 10x Genomics, Inc.*, No. 15-152-RGA, 2016 WL 927143, at *2-*3 (D. Del. Mar. 4, 2016) (dismissing plaintiff's complaint where the claims recited limitations related to "pressure" that the complaint did not address). "There needs to be some facts alleged that articulate why it is plausible that the other party's product infringes that patent claim—not just the patentee asserting, in conclusory fashion, that it is so." *N. Star Innovations, Inc. v. Micron Tech., Inc.*, No. CV 17-506-LPS-CJB, 2017 WL 5501489, at *2 (D. Del. Nov. 16, 2017), *report and recommendation adopted*, No. CV 17-506-LPS-CJB, 2018 WL 11182741 (D. Del. Jan. 3, 2018) (emphasis omitted).

**3. Pleading induced infringement**

Proof of inducement requires direct infringement by another. *See Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926-28 (2015); *see also DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1303, 1306 (Fed. Cir. 2006). To survive a motion to dismiss, the complaint must contain "facts plausibly showing that [the defendant] specifically intended [a third party] to infringe . . . and knew that the [third party's] acts constituted infringement." *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012); *see also LoganTree LP v. Omron Healthcare, Inc.*, No. CV 18-1617 (MN), 2019 WL 4538730, at *4 (D. Del. Sept. 19, 2019). Inducement requires that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement. *See Bill of Lading*, 681 F.3d at 1339 (quoting *DSU*, 471 F.3d at 1306).

**4. Pleading willful infringement**

In "egregious cases," a court may award enhanced damages, such as when infringing behavior is "characteristic of a pirate." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923,

1932 (2016). "[I]n order to sufficiently plead willful infringement, a plaintiff must allege facts plausibly showing that as of the time of the claim's filing, the accused infringer: (1) knew of the patent-in-suit; (2) after acquiring that knowledge, it infringed the patent; and (3) in doing so, it knew, or should have known, that its conduct amounted to infringement of the patent." *Valinge Innovation AB v. Halstead New England Corp.*, No. CV 16-1082-LPS-CJB, 2018 WL 2411218, at *13 (D. Del. May 29, 2018) (finding plaintiff failed to plausibly claim willful infringement where it "did not plead sufficient facts in the SAC to plausibly demonstrate that, between the date of filing of the original complaint and the date of the filing of the SAC, Defendants were on notice of how it is that they were said to infringe the asserted patents"), *report and recommendation adopted*, No. CV 16-1082-LPS-CJB, 2018 WL 11013901 (D. Del. Nov. 6, 2018); *Sapphire Crossing LLC v. Robinhood Markets, Inc.*, No. 181717MNCJBCONSOLIDA, 2021 WL 149023, at *6 (D. Del. Jan. 15, 2021) (dismissing willful infringement claim for lack of facts regarding notice of patent), *report and recommendation adopted*, No. CV 20-726 (MN) (CJB), 2021 WL 355154 (D. Del. Feb. 2, 2021); *Princeton Digital Image Corp. v. Ubisoft Ent. SA*, No. CV 13-335-LPS-CJB, 2016 WL 6594076, at *11 (D. Del. Nov. 4, 2016) (dismissing willful infringement allegations where the complaint "does not sufficiently articulate how [Defendant's] actions. . . amount to an 'egregious' case of infringement of the patent"), *report and recommendation adopted*, No. CV 13-335-LPS-CJB, 2017 WL 6337188 (D. Del. Dec. 12, 2017).

**5. Pleading compliance with 35 U.S.C. § 287(a)**

Section 287(a) limits damages for infringement of a patented article unless the patentee or its licensees marked the article or provided actual notice of infringement. 35 U.S.C. § 287(a). The limitation applies to apparatus claims and the patentee bears the burden of pleading and proving compliance with § 287(a). *See Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*,

876 F.3d 1350, 1365–69 (Fed. Cir. 2017).

### B. The Court should dismiss the direct infringement claims of counts I through III because the complaint fails to plead plausible facts supporting the alleged direct infringement.

The Court should dismiss DataSphere's direct infringement allegations of counts I through III because DataSphere failed to plausibly plead direct infringement. DataSphere's three direct-infringement counts share the same dispositive defect: each accuses multiple alternative structures that "may" satisfy a material limitation, without pleading one coherent accused configuration. Because the complaint fails to state the infringement theories that DataSphere actually intends to pursue, DataSphere's direct infringement allegations are insufficient under *Iqbal* and *Twombly*.

#### 1. Count I fails to plausibly allege that any accused Fox system includes claim 1's "next-hop address" or "network interface."

The direct infringement allegations in count I should be dismissed because the count fails to plausibly allege that Fox's accused system included a "next hop address" or "network interface" as recited in claim 1 of the '239 patent.

**"next-hop address"**

Claim 1 of the '239 patent includes five steps and recites a "next-hop address" in four of them. Specifically, claim 1 requires: (1) determining a "next-hop address"; (2) determining an address of a device in response to the "next-hop address"; (3) generating a transmission packet comprising the "next-hop address"; and (4) using the "next-hop address" to forward a data packet to the "next-hop." *See* '239 patent, claim 1.

While the "next-hop address" is woven into the fabric of claim 1, count I never specifically identifies any accused "next-hop address" let alone alleges facts plausibly showing how FOX used any accused "next-hop address" to meet the limitations of claim 1. Instead, count

I alleges only that "[t]he determined next-hop address ***may be represented, among other ways, by*** an IP address, MAC address, Ethernet Segment Identifier, ***or equivalent tenant-space address*** distinct from the remote VTEP address." D.I. 1 ¶ 57 (emphasis added). But that allegation falls woefully short of the plausibility threshold for at least three reasons.

***First***, the count does not allege that any named address actually qualifies as the recited "next-hop address." For example, the count does not allege that the accused Fox system actually used an IP address or that an IP address always qualifies as a "next-hop address." The same is true for "MAC address," "Ethernet Segment Identifier," and "equivalent tenant-space address" listed in the count. The count instead alleges only that the "next-hop address" of the accused Fox system "may be" one of the listed addresses. The complaint therefore does not allege that Fox's system used an IP address, a MAC address, an Ethernet Segment Identifier, or any "equivalent tenant-space address" as the recited "next-hop address," content to simply imply that any of these addresses could be a "next-hop address" presumably if some unidentified qualifications were met. While alleging that any such address "may be" the "next-hop address" may fall in the realm of the possible, the allegation falls well short of plausible.

The Federal Circuit's decision in *Bot M8 LLC v. Sony Corp. of Am.* confirms that simply identifying several possible components does not plausibly plead that any one of them performs the claimed function. 4 F.4th 1342 (Fed. Cir. 2021). There, the plaintiff pointed to multiple storage components in the accused devices, but "never sa[id] which one or ones satisfy the mutual authentication limitation." *Id.* at 1355. The Federal Circuit affirmed dismissal because the existence of those components did not plausibly allege the particular relationship the claim required. *Id.* at 1354-55*; see also Huang v. Amazon.com, Inc.,* No. 2024-1428, 2025 WL 314718, at *3 (Fed. Cir. Jan. 28, 2025) ("[Plaintiff's] usage of 'including but not limited to' and repeated

usage of 'etc.' fails to place [Defendant] 'on notice of what activity is being accused of infringement.'").

***Second***, the count further alleges that it is possible that the accused Fox system used some other address unidentified in the complaint as the recited "next-hop address." But alleging that the supposed "next-hop address" of the accused Fox system "may be represented" in "other ways" beyond the list of specified addresses is also an allegation of the possible, deficient in establishing plausibility. D.I. 1 ¶ 57; *see also Bot M8*, 4 F.4th at 1352.

***Third***, the count ignores that the "next-hop address" is recited in four of the five-steps of claim 1, nowhere addressing how any alleged Fox address is used as a "next-hop address" as required throughout the claim. It does not allege, for example, that (1) a particular IP or MAC address, etc., is determined, (2) that an address of a device is determined in response to the particular IP or MAC address; (3) that a transmission packet is generated that comprises the particular IP or MAC address; and (4) that the particular IP or MAC address is used to forward a data packet to the "next-hop." Instead, for example, as to the step of determining an address of a device in response to the "next-hop address," the complaint merely alleges that "[t]he determined next-hop address corresponds to a device in an external network attached to the selected target VTEP," without identifying any such next-hop address. D.I. 1 ¶ 59. Such conclusory and vague pleading fails to plausibly allege infringement. *See, e.g.*, *N. Star Innovations*, 2017 WL 5501489, at *2 ("There needs to be some facts alleged that articulate why it is plausible that the other party's product infringes that patent claim—not just the patentee asserting, in conclusory fashion, that it is so.") (emphasis omitted).

**"network interface of a target edge device"**

The same applies to the count's allegations regarding the recited "network interface."

Specifically, claim 1 requires determining a "network interface" of a device and generating a "transmission packet comprising . . . the determined network interface . . . ." But the count merely alleges that the accused device's network interface "***may*** be represented by a VNI, bridge domain, VRF interface, logical interface, ***or equivalent interface identifier***." D.I. 1 ¶ 59 (emphasis added). As with the "next-hop address," the count fails the plausibility standard for the same three reasons. ***First***, it never identifies any specific "network interface" in the accused Fox system. *See Bot M8,* 4 F.4th at 1355; *see also Huang*, 2025 WL 314718, at *3. ***Second***, the count further alleges that it is possible that the accused Fox system used some other supposedly-equivalent "network interface" unidentified in the count. *See Bot M8*, 4 F.4th at 1352. And ***third***, the count nowhere alleges that Fox determined any of the items in its non-exhaustive list of possible "network interfaces" or that any of the items was ever included in a transmission packet, as the claim requires. *See N. Star Innovations,* 2017 WL 5501489, at *2. Even worse, as to the requirement of a "transmission packet comprising . . . the determined network interface" of the device, the count alleges only that Fox meets this limitation "[o]n information and belief," without specifying any supposed "network interface" on which this "information and belief" is based. D.I. 1 ¶ 61.

DataSphere was required to plausibly plead which of the so-called addresses in the accused Fox system was the claimed "next-hop address," which component was the recited "network interface," and how the Fox system otherwise met the claim limitations within which these items are recited. Because count I fails to do so, it should be dismissed.

**2. Count II fails to plausibly allege that any accused Fox system includes claim 25's "data rate" requirements.**

The direct infringement allegations in count II should be dismissed because the count fails to plausibly allege that Fox's accused networks included "circuitry" configured to "identify

a data rate" that is "based on an amount of data existing in the buffer for the receiving client," as recited in claim 25 of the '381 patent.

In particular, claim 25 of the '381 patent requires that "the identified data rate is based on an amount of data existing in the buffer for the receiving client." But count II nowhere plausibly alleges any such data rate. Instead, the count first simply regurgitates this data-rate requirement:

> The circuitry identifies the data rate for transferring data from the accused apparatus, over the host interface, to a receiving client based, at least in part, ***on the amount of data existing in the buffer or portion of the cache associated with that receiving client and destined for that client***.

D.I. 1 ¶ 88 (emphasis added). But such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

The complaint then alleges "on information and belief" that the accused Fox systems "may include" one or more possible measures that allegedly satisfy the claim limitation:

> ***On information and belief***, the one or more [accused Fox devices] ***maintain and examine*** one or more ***measures reflecting that amount of data destined for the receiving client***. Such measures ***may include, by way of example and without limitation,*** queue occupancy, a queued-frame count, whether the buffer or queue associated with the receiving client is nonempty, the number of frames destined for the receiving client and awaiting transmission, the number of frames destined for the receiving client and outstanding against that client's advertised buffer capacity, and associated credit state for the receiving client. ***The accused circuitry uses one or more such measures***, alone or together with available credits and scheduling state . . . .

D.I. 1 ¶ 88 (emphasis added). But this allegation compounds rather than cures the defect. "May include," "by way of example," "without limitation," and "one or more such measures" make clear that DataSphere is not alleging that any particular listed measure is actually used by Fox.

Indeed, by alleging "one or more measures" and then supplying a nonexclusive list, DataSphere does not identify which measure exists in Fox's accused configuration, which buffer is "for the receiving client," what examines the measure, or how that measure produces the "identified data rate," as required by claim 25. These are the types of defects that *Bot M8* found

insufficient: the plaintiff "point[ed] to different storage components" but "never sa[id] which one or ones satisfy the mutual authentication limitation." 4 F.4th at 1354-55; *see also Huang*, 2025 WL 314718, at *3. Under plausible-pleading law, DataSphere was required to identify the factual infringement theory it alleges rather than reserve every listed possibility for later selection. *See Bot M8*, 4 F.4th at 1354-55.

The complaint's only detailed example, Brocade's "tim_txcrd_z" counter, does not fix the defects either. According to the complaint, that counter increments when a port has "zero transmitter BB_Credits and a frame waiting to be transmitted." D.I. 1 ¶ 88 & n.44. But these allegations say nothing about "the identified data rate" being "based on an amount of data existing in the buffer for the receiving client." The complaint does not allege that "tim_txcrd_z" measures that amount, does so for a particular receiving client, or causes a rate to be identified based on the measured amount. The complaint therefore fails to allege the limitation even under its only supposed detailed example.

**3. Count III fails to plausibly allege that any accused Fox system includes claim 25's remote-memory determination or allowing transmission only when the recited memory is available.**

The direct infringement allegations in count III also fail under *Iqbal* and *Twombly*. For example, the complaint fails to plausibly allege that Fox's accused network (1) determined "whether a memory in an egress terminal is available to store the data received . . . based . . . on a data amount transmitted to the egress terminal" or (2) allowed "transmission of the data from a first network to an ingress terminal only when the memory is available to store the data" as recited in claim 25 of the '778 patent.

**"determining whether a memory in an egress terminal is available to store the data received . . . based . . . on a data amount transmitted to the egress terminal"**

Claim 25 of the '778 patent requires determining whether memory in the egress terminal

is available to store received data "based at least in part on a data amount transmitted to the egress terminal." But the complaint merely alleges:

> To make that determination, the ingress endpoint maintained destination-specific availability state representing receive-memory capacity at the paired egress endpoint. That state ***may include, among other things,*** an advertised remote-buffer capacity, remaining credits or available-storage value, the amount of data transmitted but not yet credited or acknowledged, destination-queue state, tunnel or transmission-window state, ***and other remote-capacity information***.

D.I. 1 ¶ 102 (emphasis added). Once again, the words "may include," "among other things," and "other" make the list expressly nonexclusive and conditional. The complaint does not allege which state Fox's accused systems actually use or which state is specifically accused. As before, the allegation falls woefully short of the plausibility threshold because, ***first***, it does not allege that any listed "state" actually qualifies as the recited "data amount transmitted to the egress terminal." *See Bot M8,* 4 F.4th at 1355. Again, *Bot M8* rejected that same type of pleading, concluding that identifying several possible components was insufficient where the complaint "never sa[id] which one or ones satisfy" the relevant claim limitations. *Id.* at 1354-55; *see also Huang*, 2025 WL 314718, at *3. As a result, not only does the complaint fail to identify which identified feature is actually used by Fox, it fails to plausibly allege that any particular feature performs claim 25's transmitted-amount-based memory determination.

***Second***, the count further alleges that it is possible that the accused Fox system used some other supposedly-equivalent "other remote capacity information" unidentified in the count. *See Bot M8*, 4 F.4th at 1352-53.

***Third***, the count alleges no facts showing that any of the identified states satisfy the claim language. *See AgroFresh Inc. v. Essentiv LLC*, No. CV 16-662 (MN), 2019 WL 350620, at *4 (D. Del. Jan. 29, 2019) (rejecting inference that defendant's product was used in infringing manner because complaint lacked "explanation or factual basis offered for that inference or on

which the Court could conclude that that is 'the only plausible inference.'"). For example, the count never alleges that Fox's system used a supposed advertised remote buffer capacity that tracked what memory remains available based on a data amount transmitted to an egress terminal. Nor does the complaint include any facts showing that any of the other exemplary states satisfy the claim language. *See, e.g.*, *N. Star Innovations*, 2017 WL 5501489, at *2 ("There needs to be some facts alleged that articulate why it is plausible that the other party's product infringes that patent claim—not just the patentee asserting, in conclusory fashion, that it is so.") (emphasis omitted).

**"allowing transmission of the data from a first network to an ingress terminal only when the memory is available to store the data"**

Claim 25 also requires allowing transmission from a first network to an ingress terminal "***only when the memory is available***" (emphasis added). It is not enough that transmission is delayed when memory is unavailable. The claim requires that transmission only occur when the memory is available.

Here, other than repeating the claim language itself, the complaint merely alleges that this limitation is satisfied "on information and belief" because Fox's systems supposedly "***may be*** implemented, ***among other ways***, through destination-specific admission state, credits, queues, transmission windows, pause state, scheduling state, or backpressure propagated to the SAN-facing interface." D.I. 1 ¶ 104 (emphasis added). But that allegation does not identify which mechanism Fox actually used. It also does not explain how any listed mechanism makes memory availability the condition for transmission or whether it allows transmission into the ingress terminal "only when" memory is available as required by claim 25. *See AgroFresh*, 2019 WL 350620, at *4 (rejecting inference that product was used in infringing manner where complaint lacked an "explanation or factual basis" for that inference).

Thus, paragraph 104 of the count alleges only that the alleged coupling "may be implemented, among other ways," through seven different possibilities. D.I. 1 ¶ 104. But again, under *Bot M8*, identifying a menu of possible mechanisms without identifying and alleging which one performs the claim limitation does not plausibly allege infringement. 4 F.4th at 1354-55; *see also Huang,* 2025 WL 314718, at *3. Because count III neither identifies which accused mechanism is used by Fox nor pleads facts showing that any listed mechanism allows transmission from a first network to an ingress terminal "only when the memory is available," count III should be dismissed.

### C. The induced infringement allegations in counts I and II should be dismissed because the complaint fails to plausibly plead various elements of inducement.

Counts I and II include charges of inducing infringement. D.I. 1 ¶¶ 69, 94. But because the complaint does not plausibly allege direct infringement in counts I and II, as explained above, the complaint likewise fails to plausibly plead induced infringement. *See Commil*, 135 S. Ct. at 1926, 1928 (proof of inducement requires direct infringement by another); *Kajeet*, 2021 WL 780737, at *9 ("As to induced . . . infringement, a prerequisite to stating a claim of indirect infringement is that Plaintiff plausibly allege the requisite underlying act of direct infringement has occurred.").

In addition, Plaintiff's allegations of inducement are conclusory and do not include the necessary elements to support a claim of inducement. Induced infringement under 35 U.S.C. § 271(b) requires knowledge of the asserted patent, knowledge that the induced acts constitute infringement, and specific intent to encourage another's infringement. *See Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011); *see also Commil*, 135 S. Ct. at 1926 (2015); *LoganTree*, 2019 WL 4538730, at *4. The complaint alleges none of those elements with facts sufficient to support a plausible inducement claim. Instead, it merely includes two

conclusory sentences per patent regarding knowledge and intent, with no supportive facts. D.I. 1 ¶ 69 ("Fox Corporation also induces infringement by Fox Sports Productions, LLC after obtaining knowledge of the '239 Patent. It does so with specific intent through centralized architecture, configuration standards, training, support, and instructions that direct Fox Sports Productions, LLC to operate the accused EVPN-VXLAN functionality in the infringing manner."); ¶ 94. Those allegations are insufficient for at least three separate reasons.

***First***, the complaint fails to allege knowledge of the asserted patents before service of the current complaint. D.I. 1 ¶¶ 68–69, 93–94. That omission forecloses any claim by DataSphere for pre-suit induced infringement. *See Dodots Licensing Sols. LLC v. Lenovo Holding Co.*, *Inc.*, No. CV 18-098 (MN), 2018 WL 6629709, at *4 (D. Del. Dec. 19, 2018). In addition, while this Court has held that a ***prior*** complaint can provide notice of an asserted patent for post-suit induced infringement alleged in, for example, an amended complaint, DataSphere alleges knowledge of the '239 and '381 patents based solely on the ***current***, operative complaint. *See OptiMorphix, Inc. v. Akamai Techs., Inc.*, No. CV 24-1336-MN, 2026 WL 221923, at *9–*10 (D. Del. Jan. 28, 2026) (denying motion to dismiss because *prior* complaint, as opposed to the *current*, operative complaint, provided notice of asserted patents), *report and recommendation adopted*, No. CV 24-1336 (MN), 2026 WL 964332 (D. Del. Mar. 12, 2026). Other courts in this District have held that the current, operative complaint cannot provide retroactive knowledge to sustain a claim of post-suit induced infringement. *See Wrinkl, Inc. v. Facebook, Inc.*, No. 20-1345-RGA, 2021 WL 4477022, at *7 (D. Del. Sept. 30, 2021); *see also ZapFraud, Inc. v. Barracuda Networks, Inc.*, 528 F. Supp. 3d 247, 252 (D. Del. 2021); *Densys Ltd. v. Align Tech. Inc.*, No. CV 25-768-GBW, 2026 WL 1506566, at *15-*17 (D. Del. May 29, 2026). This Court should reach the same conclusion and dismiss any pre- or post-suit induced infringement claims.

***Second***, the complaint does not plausibly allege knowledge of infringement. Knowledge of a patent is not knowledge that the induced acts infringe it. *See Commil*, 135 S. Ct. at 1926 ("…liability for inducing infringement attaches only if the defendant knew of the patent ***and*** that the induced acts constitute patent infringement.") (emphasis added) (citation omitted). The complaint does not allege that Fox received an infringement chart, technical explanation, or other information mapping the accused systems to the asserted claims (or otherwise demonstrating infringement) before suit. Its conclusory assertion that Fox knew the alleged acts infringed merely repeats the mental-state element. That defect is especially consequential here because the direct-infringement allegations are dependent on unidentified alternatives in the accused Fox systems that supposedly "may" meet certain claim limitations, as explained above with respect to the deficient direct-infringement allegations. If the complaint itself does not identify which address is the '239 "next-hop address" or which measure supplies the '381 buffer-based rate, for example, the complaint does not plausibly allege that Fox knew another's acts satisfied those limitations.

***Third***, the complaint fails to allege facts that plausibly would support a finding of specific intent to infringe. *See LoganTree*, 2019 WL 4538730, at *4. The complaint relies on allegations that Fox Corporation provides common standards, training, support, shared personnel, centralized administration, or architectural direction. D.I. 1 ¶¶ 12-13, 69, 94. Those actions do not show a purpose to cause patent infringement. The complaint identifies no instruction, configuration guide, training material, directive, or communication of any kind encouraging any person to perform the particular claimed acts. Specific intent cannot be inferred merely because a corporate parent supports technology used by an affiliate. Instead, the plead facts must plausibly show affirmative steps taken to bring about the acts constituting

infringement. *See Global-Tech*, 563 U.S. at 760; *see also Dodots Licensing Sols.*, 2018 WL 6629709, at *4 ("Although Plaintiff cites Defendants' website as support for its allegation, it does so generically and does not identify any particular statement or material that plausibly suggests Defendants intend to induce infringement of the Patents-in-Suit."). Because the complaint alleges only general support and control, the inducement claims should be dismissed.

**D. The willful infringement allegations of counts I and II should be dismissed because the complaint fails to plausibly plead various elements of willful infringement.**

Counts I and II also include charges of willful infringement. D.I. 1 ¶¶ 68, 93. But, similar to DataSphere's induced infringement allegations, the complaint fails to plausibly plead willful infringement because it does not plausibly allege direct infringement in counts I and II. *See Commil*, 135 S. Ct. at 1926-28; *see also DSU Med.*, 471 F.3d at 1303, 1306; *Valinge Innovation,* 2018 WL 2411218, at *12-*13 ("In sum, in order to sufficiently plead willful infringement, a plaintiff must allege facts plausibly showing…the accused infringer: (1) knew of the patent-in-suit; (2) after acquiring that knowledge, ***it infringed the patent***; and (3) in doing so, it knew or should have known, that its conduct amounted to infringement of the patent.") (emphasis added). The willful infringement allegations should be dismissed for this reason alone.

In addition, to properly plead a willful infringement claim, a complaint must plausibly allege knowledge of the asserted patent before infringement began. *See Valinge Innovation*, 2018 WL 2411218, at *13. Here, the complaint alleges no pre-suit knowledge of the '239 or '381 patents. Fox's supposed willful infringement instead began "at least as of service of this Complaint. . . ." D.I. 1 ¶¶ 68, 93. That is insufficient for *pre-suit* willful infringement. Further, DataSphere's *post-suit* willful infringement allegations should also be dismissed. As explained above, other courts in this District have held that an original complaint cannot provide retroactive knowledge to overcome a motion to dismiss. *Wrinkl*, 2021 WL 4477022, at *7;

*ZapFraud*, 528 F. Supp. at 252; *Densys*, 2026 WL 1506566, at *15-*17. Nor does the current complaint provide knowledge of the alleged infringement for the reasons explained above regarding the direct-infringement allegations.

Further, enhanced damages under 35 U.S.C. § 284 are reserved for egregious cases typified by willful misconduct. *Halo Elecs., Inc.*, 136 S. Ct. at 1931-32. At the pleading stage, a plaintiff must at least allege facts showing deliberate infringement. *See Valinge Innovation*, 2018 WL 2411218, at *13. Bare allegations that the defendant merely continued existing operations do not plead egregious conduct. Here, the complaint is insufficient to plead an egregious case because it alleges no conduct beyond maintaining systems whose alleged infringement is itself inadequately pleaded. *See Princeton Digital Image Corp.*, 2016 WL 6594076, at *11 (dismissing willful infringement allegations where complaint "does not sufficiently articulate how [Defendant's] actions. . . amount to an 'egregious' case of infringement of the patent").

Accordingly, the willful infringement allegations in counts I and II should be dismissed.

### E. The Court should dismiss DataSphere's pre-suit damages claim as to the '381 patent because the complaint fails to plead compliance with the marking statute.

Section 287(a) limits damages for infringement of a patented article unless the patentee or its licensees marked the article or provided actual notice of infringement. 35 U.S.C. § 287(a). The limitation applies to apparatus claims and the patentee bears the burden of pleading and proving compliance with § 287(a). *Arctic Cat*, 876 F.3d at 1365-69. This Court has held that compliance with § 287(a) must be pleaded where the asserted claims are not limited to method claims. *See OptiMorphix*, 2026 WL 221923, at *12.

Here, the exemplary asserted claim 25 of the '381 patent is an apparatus claim. DataSphere therefore must plead facts supporting either marking of patented articles or actual notice before filing suit if it seeks pre-suit damages. The complaint does neither. It does not

allege that DataSphere, its predecessors, or its licensees consistently marked products practicing the ’381 patent. It does not allege that no patented articles existed. And it identifies no pre-suit notice to Fox of infringement of the ’381 patent. The Court should therefore dismiss the demand for damages for infringement of the ’381 patent occurring before actual notice.

## V. CONCLUSION

For the foregoing reasons, the Court should dismiss counts I through III in their entirety. In addition to dismissing the direct infringement allegations in those counts, the Court should dismiss the induced and willful infringement allegations in counts I and II and DataSphere’s pre-suit damages claim as to the ’381 patent.

Dated: November 6, 2026

Respectfully submitted,

BAKER & HOSTETLER LLP

*/s/ Daniel J. Goettle*

Daniel J. Goettle (#6664)
BAKER & HOSTETLER LLP
1201 N. Market Street, Suite 1407
Wilmington, DE 19801
(302) 407-4220
dgoettle@bakerlaw.com

Susan M. Natland (*admitted pro hac vice)*
Baker & Hostetler LLP
600 Anton Blvd., Suite 900
Costa Mesa, A 92626
(714) 966-3506
snatland@bakerlaw.com

Jeffrey W. Lesovitz (*admitted pro hac vice)* Baker & Hostetler LLP
1735 Market Street, Suite 3300
Philadelphia, PA 19104
(215) 564-2406
jlesovitz@bakerlaw.com

Alyssa R. Kaufman (*admitted pro hac vice)*
Baker & Hostetler LLP
1900 Avenue of the Stars, Suite 2700
Los Angeles, CA 90067
(310) 979-8474
akaufman@bakerlaw.com

*Attorneys for Defendants Fox Corporation and Fox Sports Productions, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 6, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

*/s/ Daniel J. Goettle*
Daniel J. Goettle (#6664)